Anthony RINALDI, as Executor of the Estate of Loretta H. McCormack and Sylvia Rinaldi, Plaintiffs,

v.

JAMES J. DUANE & CO., INC., Philip DeFina, and James J. Duane, Jr., Defendants,

and

Joseph Rinaldi, Additional Defendant on Counterclaim.

No. 85 Civ. 5142 (GLG).

United States District Court, S.D. New York.

Aug. 17, 1988.

Greenberger & Forman, New York City (Robert W. Forman, of counsel), for plaintiff Sylvia Rinaldi.

Cooper & Bamundo, Brooklyn, N.Y., for Anthony Rinaldi, as Executor of the Estate of Loretta McCormack.

Joseph S. Williams, New York City (John F. Duane, of counsel), for defendants James J. Duane & Co. and James J. Duane, Jr.

Irving P. Seidman, P.C., New York City (Lawrence H. Silverman, of counsel), for defendant Philip DeFina.

## OPINION

GOETTEL, District Judge.

Plaintiffs allege defendants violated sections 10(b) and 20 of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, 15 U.S.C. §§ 78j(b), 78t, 17 C.F.R. § 240.10b–5, the RICO Act, 18 U.S.C. § 1962(c), as well as state laws of fraud, negligence and fiduciary duty. Specifically, plaintiffs allege defendants made material misrepresentations and omissions in connection with the purchase and sale of securities in accounts in plaintiffs' names. One defendant, James J. Duane & Co., Inc. ("Duane Co."), interposed a counterclaim and in it named an additional defendant, Joseph Rinaldi.

This case is before the court upon the defendants' motion to dismiss for failure to allege facts with particularity as required by Fed.R.Civ.P. 9(b), and for failure to state a cause of action upon which relief may be granted, Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment, Fed.R.Civ.P. 56(b). There is no motion before us with respect to defendant Duane Co.'s counterclaim.

For the reasons discussed below, the defendants' motion to dismiss is granted, but the plaintiffs are given leave to replead in accordance with this opinion.

## BACKGROUND

This action presents facts so convoluted that a recitation of its history is a prerequisite to a complete understanding of the present motion. Although this action is centered around events occurring during a three-week period in the spring of 1985, its tangled roots extend back to the time Joseph Rinaldi, husband and brother respectively of plaintiffs Sylvia Rinaldi and Loretta McCormack, was imprisoned. Joseph Rinaldi, a disbarred attorney, served a sentence in a federal penitentiary, reportedly for tax evasion. While in prison, he was introduced to a supposedly perfect way to make money trading stock index options. Trading stock index options is a highly speculative investment plan, and, as is now obvious, his scheme was less than foolproof.

In 1983, defendant Phillip DeFina ("DeFina"), an old friend of the Rinaldi family through their son, had recently graduated from college and accepted a position as a stockbroker with the firm of Brooks, Hamburg & Satnick, Inc. Joseph Rinaldi opened an account with DeFina in his wife's name, Sylvia Rinaldi, who was present when the account was opened. However, it is clear that Joseph Rinaldi, not Sylvia Rinaldi, controlled the account. There was only one transaction in this account, an order placed by Joseph Rinaldi for the purchase of Exar communications, a pennystock. When DeFina subsequently left Brooks, Hamburg & Satnick, Inc., this account was transferred to his new firm, Sutton Securities, Inc., and then to defendant James J. Duane & Co., Inc. when DeFina accepted employment there. It is the actions taken by DeFina during his employment by Duane Co. with respect to this account and an account subsequently opened by Joseph Rinaldi in the name of his sister, Loretta McCormack, which form the basis of this action.

DeFina's first contact with Rinaldi's stock index options plan was in mid–April 1985. At that time, Rinaldi approached DeFina and indicated that he wished to begin trading in stock index options. Pursuant to Rinaldi's wishes, DeFina opened accounts and began trading stock index options in the names of the plaintiffs, Rinaldi's wife and sister. Sylvia Rinaldi executed a margin agreement as well as an "Option Approval Form and Agreement" which indicated that she had "extensive" experience trading options over the past fifteen years. She now, however, disavows any responsibility for the stock index options trading, a responsibility she claims is attributable to her late husband.

Joseph Rinaldi provided DeFina with all the necessary information about his sister and delivered the required forms bearing McCormack's purported signature. No margin balance was required and Joseph Rinaldi put up no funds. McCormack says that she did not authorize the opening of any account and did not give consent to the trading in her name. McCormack claims, as does plaintiff Sylvia Rinaldi, that such trades were unsuitable in light of her age, investment experience and financial situation.

Joseph Rinaldi traded in the names of his wife and sister for a three week period during which there were at least 69 separate purchases and sales. DeFina kept extensive notes of his many telephone conversations with Rinaldi in which he was given investment instructions, and it appears that Joseph Rinaldi was in regular contact with DeFina during this time period. The plaintiffs allege that the defendants controlled all trading in the plaintiffs' accounts,[1] and that DeFina failed to obtain the consent of plaintiffs before executing the trades. Plaintiffs further claim that DeFina failed to question the suitability of these trades for either plaintiff.

Admittedly, DeFina had little contact with the plaintiffs during the relevant time period. Although he did speak with Mrs.

---

**1.** We note parenthetically that we are unsure of the basis of this allegation. Plaintiff McCormack is now deceased as is Joseph Rinaldi. Evidence is unavailable from him as he died before being deposed. Thus, the basis for plaintiffs' contention that defendants "exercised control over the volume and frequency of trading" in the accounts is beyond the understanding of this court.

Rinaldi twice, once telling her the account was up, he was clearly acting on the directions of Joseph Rinaldi. During this period, however, defendant Duane Co. sent, and both plaintiffs received, several confirmation slips for the transactions in their accounts, which they in turn gave to Joseph Rinaldi. Checks, each in the amount of $4,500, were issued by Duane Co. to each plaintiff. The check to Sylvia Rinaldi was deposited in her own bank account, while a stop payment was placed on the check to McCormack after losses occurred. At her deposition, Sylvia Rinaldi acknowledged that her husband had her consent to trade in her name and that she learned while listening on an extension phone to some of the telephone conversations between her husband and DeFina that options were being traded in her account.

After three weeks of active trading, the plaintiffs' accounts showed a small profit resulting in the issuance of the two previously mentioned checks, each for $4,500. This turn of good fortune, however, was shortlived. Sometime after May 16, 1985, the accounts suffered massive losses. Joseph Rinaldi was asked to meet margin calls totalling $3 million dollars. He was unable to meet these margin calls and as a result the accounts were liquidated. Upon liquidation, the paper losses in the two accounts totalled approximately $275,000.

*Original Complaint*

After the accounts were liquidated, Duane Co. sought to recoup from Sylvia Rinaldi and Loretta McCormack the $275,000 deficiency resulting from the liquidation. Joseph Rinaldi then retained counsel and was instrumental in the commencement of this suit on behalf of plaintiffs Sylvia Rinaldi and McCormack. The plaintiffs alleged violations of the Securities Act of 1933, the Securities and Exchange Act of 1934, Rule 10b–5, the RICO Act, and state laws with respect to fraud, negligence, and breach of fiduciary duty. The original complaint alleged that by making "express and implied false and fraudulent representations to Joseph Rinaldi, the duly authorized representative of the plaintiff[s]"[2], DeFina induced Joseph Rinaldi to open the accounts. The defendants were charged with knowledge of the fraudulent nature of their representations and with Joseph Rinaldi's reliance on these representations. Defendant Duane Co. counterclaimed seeking to recover the deficiency owed by plaintiffs on the liquidated accounts.

*First Amended Complaint*

After the original complaint was filed, but before his deposition could be taken, Joseph Rinaldi died unexpectedly. Only then did the plaintiffs claim to have first discovered that Joseph Rinaldi was not the innocent victim of the defendants' malfeasance, but was himself the creator of the fraud inflicted on them. This revelation purportedly prompted the plaintiffs to seek to amend their complaint. The first amended complaint alleged the complicity of Joseph Rinaldi in the fraud against the plaintiffs. This change in the role of Joseph Rinaldi from the *de facto* plaintiff to the most culpable defendant, created a conflict of interest for plaintiffs' original attorneys. They, therefore, withdrew and plaintiffs thereafter obtained new counsel.

*Second Amended Complaint*

Plaintiffs' new counsel immediately sought leave to amend the complaint yet again. Leave was granted and it is this second complaint which is presently before the court. Conspicuous by its absence in the second amended complaint is any allegation of wrongdoing by Joseph Rinaldi. The fact that no mention is made of Joseph Rinaldi's role in this saga, is not a totally surprising development as he died intestate and penniless after the original complaint was filed. No one had appeared on behalf of the additional counterclaim defendant, Joseph Rinaldi.

DISCUSSION

The legal bases for plaintiffs' current complaint, like its predecessors, are alleged violations of the securities laws, RICO, and

---

**2.** Before his death, Joseph Rinaldi advised the attorneys who drafted the original complaint that with respect to the trades he had acted as the authorized agent for both plaintiffs. Both plaintiffs read the original complaint and authorized their attorneys to file it.

state laws. Plaintiffs' crucial claim is the allegation of violations of Rule 10b–5. The validity of the RICO claim and the state law claims rise or fall with the disposition of the claims under Rule 10b–5. As defendants note, the plaintiffs' complaint is far from a model of specificity. It is clear, however, that plaintiffs assert that the defendants failed to warn them of the risk of stock index options trading, and engaged in excessive and inappropriate trading in light of the plaintiffs' age, financial position and investment experience. It is these actions which the plaintiffs allege are the predicates for the RICO and state law violations.

Defendants have moved to dismiss plaintiff's claims pursuant to Rules 9(b), 12(b)(6), and 56(b) of the Federal Rules of Civil Procedure, but have not moved with respect to defendant Duane Co.'s counterclaim. We note the plaintiffs have set forth three pages of facts they contend are in contest. The single substantial issue of disputed fact of whether the plaintiffs authorized Joseph Rinaldi to act on their behalf or ratified his actions is sufficient to deny summary judgment.

■ It is the complaint itself which prevents us from addressing the motions as motions for summary judgment. The present complaint attempts to ride two inconsistent factual premises. The plaintiffs plead, on the one hand, that they never opened the accounts in question, never authorized Joseph Rinaldi to open them, and never ratified his actions in opening the accounts and trading in them. If these assertions are true, the plaintiffs have a total defense to the defendant's counterclaim to collect the deficiencies and would be entitled to the relief sought in the first six causes of action of rescission of the transactions. The plaintiffs, however, also, seek $5 million dollars in affirmative damages on the theory their brokers, the defendants, failed to comply with the securities law with respect to their accounts.[3] But, the plaintiffs cannot have been defrauded by someone with whom they had no transactions. If, in fact, Joseph Rinaldi was proceeding on his own, the purported failures of the defendants with respect to the persons named as owners of the accounts was immaterial, since they were not responsible for the accounts. Stated differently, to be a defrauded customer, you must first be a customer.[4]

We suspect that this schizophrenic approach to pleading is influenced by the fact Mrs. Rinaldi may have had some losses[5], while Loretta McCormack never invested a penny.[6] Moreover, while there is some evidence to support the defendants' claim that Mrs. Rinaldi either authorized her husband to open the account in her name or ratified his actions, the defendants can, at the present time, offer little evidence to prove that plaintiff McCormack authorized her

3. These claims include fraud, negligence and breach of fiduciary duty in that the trades made were unauthorized, excessive, or unsuitable and that the plaintiffs were not given appropriate warnings of the risks involved.

4. For example, the plaintiffs claim that DeFina was churning the account. It is uncontroverted that he had no discretionary authority. DeFina contends he was told by Joseph Rinaldi that he was the plaintiffs' authorized representative and, therefore, he placed orders at the direction of Joseph Rinaldi. If Rinaldi was not the plaintiffs' authorized representative, the trades, insofar as plaintiffs are concerned, are non-existent. If he was their authorized representative and directed that the trades be made, there can be no churning.

While the plaintiffs allege that there were many additional documents that should have been signed by them, and which would thereby have alerted them to their possible exposure to financial losses, it is apparent that Joseph Rinaldi had already produced many similar documents which one plaintiff denies being bound by, and the other plaintiff denies ever signing. If, as it appears, Joseph Rinaldi was acting fraudulently, paper safeguards were likely to be ineffective.

5. While no money was put up by Joseph Rinaldi for margin, he had previously transferred the small account of Mrs. Rinaldi to the Duane Co. We do not know whether the check for $4,500 she received as profit on the account was more or less than the original value of the account.

6. No margin deposit was required and, indeed, that is one of the deficiencies in the defendants' operations which is asserted as a basis for the securities fraud claims.

brother's actions.[7] The two plaintiffs are in a rather tricky position in this litigation and the best approach for one may not be suitable for the other. They can either look to avoid any responsibility for the margin deficiencies on the theory that Joseph Rinaldi acted without authority or they can attempt to make a profit from the situation by accepting the notion the accounts were properly opened but improperly supervised. But, they should not be allowed to do both simultaneously.

Defendant Duane Co. is not in a good position either. There is a substantial claim against it by the firm with whom it placed the orders now in dispute.[8] Further, even if they prevail on the counterclaim, there does not appear to be any realistic hope of recovering these funds from Sylvia Rinaldi or from the estate of Loretta McCormack.

This case is further complicated by the death of Joseph Rinaldi. He was instrumental in the commencement of this lawsuit on the theory that he had been improperly advised with respect to the actions complained about. His death led to the allegation that he had been attempting to defraud his wife and sister.[9]

The present complaint, as we noted above, attempts to straddle completely inconsistent factual premises. While the federal rules do not prohibit alternative pleading, in light of the fact we have had three factually inconsistent complaints, and the third is internally inconsistent, we will grant defendants' motion to dismiss, but with leave to replead for a third time. The plaintiffs must replead one premise or the other, although they do not necessarily both have to replead the same factual premise. Each plaintiff should allege whether she was or was not a customer of the defendants. In that fashion, we hope to bring the allegations of the complaint into a position where the motions for summary judgment can be analyzed.

SO ORDERED.

---

7. Loretta McCormack testified at her deposition that the signatures appearing on her account documents were not genuine and that she was totally unaware her brother was using her name. She also denied any knowledge of the issuance to her of the $4,500 check. McCormack's subsequent death means the deposition will be admissible and the defendants will have little or nothing with which to counter this contention, particularly in view of DeFina's acknowledgement that he never dealt directly with her.

8. That claim is in arbitration.

9. We find this claim to be unlikely. Mrs. Rinaldi's testimony makes it apparent that her husband conducted all of her business for her and while he, because of his criminal past, may have preferred putting their joint assets in her name, there is no indication she had a separate estate he was attempting to embezzle. As to his sister, she lost nothing because of these transactions. It would appear that if Joseph Rinaldi was attempting to defraud anyone, it was DeFina and Duane Co.